IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES M. BRANDON, | Case No.  1:19-cv-01923-GHW |
| Plaintiff, | |
| v. | |
| NPG RECORDS, INC.; NPG MUSIC PUBLISHING, LLC; THE ESTATE OF PRINCE ROGERS NELSON; COMERICA BANK & TRUST, N.A.; SHELTON JACKSON LEE; FORTY ACRES AND A MULE MUSICWORKS, INC.; TWENTIETH CENTURY FOX FILM CORPORATION, | |
| Defendants. | |

---

### DEFENDANTS NPG RECORDS, INC., NPG MUSIC PUBLISHING, LLC, THE ESTATE OF PRINCE ROGERS NELSON, AND COMERICA BANK & TRUST, N.A.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

---

Lora M. Friedemann (*admitted pro hac vice*)
Anne Rondoni Tavernier (*admitted pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  (612) 492-7000
Fax: (612) 492-7077
lfriedemann@fredlaw.com
arondonitavernier@fredlaw.com
***Attorneys for Defendants NPG Records, Inc., NPG Music Publishing, LLC, the Estate of Prince Rogers Nelson, and Comerica Bank & Trust, N.A.***

KENNEDYS CMK LLP
*Attorneys for Defendants*
NPG RECORDS, INC., NPG MUSIC PUBLISHING, LLC, THE ESTATE OF PRINCE ROGERS NELSON, AND COMERCA BANK & TRUST, N.A
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004
Michael J. Tricarico, Esq.

**Table of Contents**

Page

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ........................................................................................  1

BACKGROUND .........................................................................................  1

    I. The Florida Litigation ..........................................................................  1

    II. The Deficient Complaint ......................................................................  4

    III. Attempts to Meet and Confer with Plaintiff's Counsel ......................................  8

ARGUMENT ...........................................................................................  8

    I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE ESTATE ....  9

    II. RES JUDICATA BARS THIS SUIT .................................................. 13

    III. FAILURE TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ....... 20

CONCLUSION ........................................................................................ 21

## Table of Authorities

**Cases**

*Alpert's Newspaper Delivery Inc. v. The New York Times Co.*,
  876 F.2d 266 (2d Cir. 1989) ............................................................................... 15

*Applications in Internet Time, LLC. v. RPX Corp.*,
  897 F.3d 1336 (Fed. Cir. 2018) .......................................................................... 16

*Cameron v. Church*,
  253 F.Supp.2d 611 (S.D.N.Y. 2003) .................................................................. 14

*Channer v. Department of Homeland Sec.*,
  527 F.3d 275 (2d Cir. 2008) ............................................................................... 17

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d. Cir. 2010) ........................................................................... 9, 12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................................... 11, 12

*DoubleLine Capital LP v. Construtora Noberto Odebrecht, S.A.*,
  13 F.Supp. 3d 187 (S.D.N.Y. 2019) ................................................................... 10

*Ferring B.V. v. Serenity Pharmaceuticals, LLC*,
  2019 WL 2590732 at *13 (S.D.N.Y. 2019) ................................................... 18, 19

*Harding v. Paramount Pictures*,
  2013 WL 174401 at *7 (S.D.N.Y. Jan. 16, 2013) .............................................. 16

*Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ................................................................................... 9

*Interoceanica Corp. v. Sound Pilots, Inc.*,
  107 F.3d 86–92 (2d Cir. 1997) ........................................................................... 19

*Int'l Shoe Co. v. Washington Office of Unemp't Comp. & Placement*,
  326 U.S. 310 (1945) ............................................................................................ 12

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ............................................................................... 10

*Jorgensen v. Epic/Sony Records*,
  351 F.3d 46 (2d Cir. 2003) ........................................................................... 20, 21

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ............................................................................... 14

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
  23 F. Supp. 3d 344 (S.D.N.Y. 2014) ............................................................. 14, 18

*Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*,
    779 F.3d 102 (2d Cir. 2015) ....................................................................... 13, 14

*Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*,
    898 F.3d 232 (2d Cir. 2018) ....................................................................... 13, 14

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002) ............................................................................. 17

*McGowan*,
    52 N.Y.2d .......................................................................................................... 9

*Metro. Life Ins.*,
    84 F.3d ............................................................................................................. 12

*Monahan v. New York City Dept. of Corrections*,
    214 F.3d 275 (2d Cir. 2000) ............................................................................. 15

*Nealy v. Berger*,
    2009 WL 704804 at *10 (E.D.N.Y. Mar. 16, 2009) ........................................... 18

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
    513 B.R. 437 (S.D.N.Y. 2014) ........................................................................... 18

*Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*,
    450 F.3d 100 (2d Cir. 2006) ............................................................................... 9

*Taylor*,
    553 U.S. at 894 .......................................................................................... 13, 16

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ....................................................................... 10, 11

*Weaver v. IndyMac Federal Bank, FSB*,
    2019 WL 4563893 at *9 (S.D.N.Y. Sept. 9, 2019) ............................................ 13

*Wyly v. Weiss*,
    697 F.3d 131 (2d Cir. 2012) ............................................................................. 13

*Zoll v. Ruder Finn., Inc.*,
    2003 WL 22283830 at *7 (S.D.N.Y. Oct. 2, 2003) ............................................ 16

**Statutes**

C.P.L.R. 302 ........................................................................................................... 10

**Other**

FED. R. CIV. P. 12 ........................................................ 1, 2, 3, 4, 9, 13, 14, 15, 17, 19

Fed. R. Civ. P. 41 .................................................................. 4, 5, 6, 8, 14, 15

## INTRODUCTION

Plaintiff James Brandon already had his day in court. He sued Defendants in Florida for the same claim, based on the same facts as those at issue here.  That litigation resulted in a judgment on the merits for the Defendants on April 3, 2017.  The instant suit is therefore barred by both claim preclusion and issue preclusion.  Yet Brandon has unreasonably persisted in bringing this case despite the prior litigation and despite failing, after a year of litigation and four months of jurisdictional discovery, to prove personal jurisdiction exists over the Prince-related entities.  Accordingly, Defendants Comerica Bank & Trust, N.A. as Personal Representative for the Estate of Prince Rogers Nelson, NPG Records, Inc., and NPG Music Publishing, LLC, (collectively, the "Prince Estate" or "Estate") request that this Court dismiss the Complaint with prejudice.

## BACKGROUND

The parties' history reveals the propriety of the motion at hand.  The Complaint seeks the same relief that the plaintiff requested in a recently dismissed Florida litigation, and Brandon's jurisdictional fishing expedition has not produced a good faith basis for this Court to exercise personal jurisdiction over the Prince Estate here.

### I. The Florida Litigation.

The instant suit is not Plaintiff James Brandon's ("Brandon") first, or even second, attempt to litigate this claim against the Prince Estate.  This dispute reaches back to 2007, when Brandon filed suit in Barbados against the same defendants on the same claims as those at issue here. (Declaration of Anne Rondoni Tavernier ("Tavernier Decl.") at Ex. 1, p. 2.)  Indeed, Brandon "has been initiating and then discontinuing this case multiple

times over the past 20 years." (*Id.* at Ex. 2, p. 4.)   It is the recent Florida litigation, however, that is the most germane to this motion.

                        A.    The    Florida    Litigation    Was    a    Protracted    *Affair.*

Brandon filed suit against Prince, New Power Generation, LLC, NPG Music Publishing, LLC, Warner Brothers Records, Inc. ("Warner Brothers"), Tommy Elm, Shelton Jackson Lee, and Forty Acres and a Mule Musicworks, Inc. in the Southern District of Florida on July 22, 2015 (the "Florida Litigation"). (*Id.* at Ex. 2, p. 2.)   The claims asserted in the Florida Litigation were identical to the claims brought here; Brandon alleged that Defendants' song "Girl 6" infringed his rights in a song entitled "Phone Sex" by way of his alleged copyrights in a demo tape dubbed "GOMAB DEMO: PT. 1." (*Id.* at Ex. 2, pp. 4-7.)

According to Judge Kathleen Williams, the proceedings in the Florida Litigation were "tortured."  (*Id.* at Ex. 2, p. 1.)   Six months after the original complaint was filed, Brandon had failed to serve process, for which he "offered no reasoned justification." (*Id.* at Ex. 2, p. 3.)[1]   Judge Williams permitted Brandon to file a second amended complaint so long as it conformed to the Federal Rules of Civil Procedure and contained more specific factual allegations. (*Id.*)   Brandon was ultimately able to serve Warner Brothers, but failed to serve Prince and his entities. (*Id.*)   Prince agreed to indemnify Warner Brothers for its defense of the Florida Litigation. (*Id.* at Ex. 3, p. 1; Ex. 4, p. 1.)   Brandon then faced multiple motions to dismiss or strike the second amended complaint.   In

---

[1] Notably, Plaintiff was represented by counsel throughout the Florida Litigation. (*See* Tavernier Decl. at Exs. 5, 7.)

response, Brandon moved to dismiss *his own* complaint without prejudice. (*Id.* at Ex. 2, pp. 3-4.)  The Court granted Brandon "one last opportunity," and Brandon filed a *third* amended complaint. (*Id.*)  The third amended complaint named the Estate of Prince Rogers Nelson as a defendant. (*Id.* at Ex. 7.)  Prince Rogers Nelson died on April 21, 2016.

### B. The Florida Litigation Ended in a Final Judgment and a Fees Award.

After multiple motions to dismiss, including Warner Brothers' motion to dismiss pursuant to Rule 12(b)(6), Judge Williams dismissed the Complaint for failure to state a claim for copyright infringement (the "Florida Judgment").  (*Id.* at Ex. 12; Ex. 2, pp. 8-17.)  She first determined that the "GOMBA DEMO: PT. 1" copyright registration covered only the lyrics of the songs. (*Id.* at Ex. 2, pp. 9-15.)  Therefore, as "Girl 6" and "Phone Sex" have different lyrics, the sole basis for infringement was the purported similarity in phrases and consonants between the two songs. (*Id.*)  Judge Williams held that those similarities did not constitute copyright infringement as a matter of law. (*Id.*)  She also found that Brandon's supplementary copyright application did not expand the scope of the registration so as to provide an alternate basis for infringement. (*Id.* at Ex. 2, pp. 12-14.)  Finally, Judge Williams found that Brandon failed to state a claim because the third amended complaint did not allege that any of the defendants, including Prince, had access to "Phone Sex." (*Id.* at Ex. 2, pp. 15-17.)  The complaint was dismissed as to the Prince Estate pursuant to Fed. R. Civ. P. 41(b). (*Id.* at Ex. 2, p. 20).

The Prince Estate subsequently moved for recovery of its attorneys' fees, citing the "tortured" and frivolous history of the litigation. (*Id.* at Ex. 3, p. 2.)  The Court

awarded over \$60,000 in attorneys' fees.[2] (*Id.* at Ex. 6.)   When the Estate attempted to collect the award, it learned that Brandon is unemployed, supported by his parents, and has no assets to satisfy the judgment. (*Id.* ¶ 9.)   Brandon did not appeal the Florida Judgment and the time for him to do so has long since lapsed.

## II. The Deficient Complaint.

A.   *The   Complaint   is   Identical   to   the   Florida   Complaint.*

The claims asserted in this case mirror those alleged in the third amended complaint of the Florida Litigation (*See* Dkt. 1 ¶¶ 14-32 ("Complaint"); Tavernier Decl. at Ex. 7 ("Florida Complaint") ¶¶ 16-36.)   A paragraph-by-paragraph review of the Complaint and the Florida Complaint suggests that the fact section of the Complaint was copied and pasted from the Florida Complaint. (*Id.*)   The two complaints contain identical facts, and nearly identical organization and syntax.   Indeed, whole paragraphs of the Florida Complaint are repeated word-for-word in the Complaint. (*Compare* Dkt. 1 ¶¶ 14, 30; Florida Complaint ¶¶ 16, 33.)

### i. *Creation of GOMAB DEMO: PT. 1.*

Both complaints begin with Brandon's alleged musical past.   Brandon purportedly managed the musical group GOMAB, which created "GOMAB DEMO: PT. 1." (Dkt. 1 ¶ 14; Florida Complaint ¶ 16.)   "GOMAB DEMO: PT. 1" contained the track "Phone Sex." (Dkt. 1 ¶ 15; Florida Complaint ¶ 17.)   Brandon claims he met Spike Lee's uncle,

---

[2] The Court awarded over \$11,000 to Comerica Bank & Trust, N.A., and over \$50,000 to Warner Brothers. (Tavernier Decl. at Ex. 6.)

Clarence Lee, in 1994, and played the track "Phone Sex" for him. (Dkt. 1 ¶ 17; Florida Complaint ¶¶ 18-19.)   Clarence Lee then allegedly told Spike Lee about "Phone Sex," who requested the music be sent to a person named Lisa Jackson. (Dkt. 1 ¶ 18-19; Florida Complaint ¶¶ 20-21.)   There are no allegations regarding Prince or the Estate's access to "Phone Sex." (*See* Dkt. 1 ¶¶ 15-21, Florida Complaint ¶¶ 16-21.)

ii.  *The Relevant Copyright Registrations.*

Both complaints contain nearly identical allegations regarding the relevant copyrighted works.  The copyright for the lyrics of "Phone Sex" was registered in 1995. That year, two GOMAB members (but not Brandon) registered "GOMAB DEMO: PT. 1" with the U.S. Copyright Office. (Dkt. 1 ¶ 22; Florida Complaint ¶ 23.)  Eighteen years later, in 2013, the copyright holders of "GOMAB DEMO: PT. 1" allegedly transferred their interests to Brandon. (Dkt. 1 ¶¶ 27-28; Florida Complaint ¶¶ 29-30.)  On April 6, 2016, during the Florida Litigation, Brandon filed a Form CA to augment the original registration. (Dkt. 1 ¶ 29; Florida Complaint ¶ 31.)

The copyright for "Girl 6" was registered in 1996; the registration identifies Prince and Tommy Elm as authors. (Dkt. 1 ¶ 23; Florida Complaint ¶ 24.)  The movie "Girl 6" was released in 1996, along with the soundtrack that featured the song "Girl 6." (Dkt. 1 ¶¶ 24-25; Florida Complaint ¶¶ 25-26.)

iii.   *Alleged Similarities between "Phone Sex" and "Girl 6"*

Finally, both complaints make nearly identical allegations regarding the claimed "substantial and significant similarities" between "Phone Sex" and "Girl 6." (Dkt. 1 ¶ 30; Florida Complaint ¶ 33.)  Both songs purportedly contain a "two-word, two-pitch hook,"

with repeated "identical consonants" and "similar melodies." (*Id.*)  Brandon likewise claims that the songs contain a similar "trumpet hit arrangement" and "echo-sound reverberation effect." (Dkt. 1 ¶¶ 31-32; Florida Complaint ¶¶ 34-35.)  These facts form the sole basis for Brandon's copyright infringement claim, both here and in the Florida Litigation. (*See* Dkt. 1 ¶¶ 39-48; Florida Complaint ¶¶ 40-52.)

  *B.  Lack of Jurisdictional Facts and Resulting Jurisdictional Discovery.*

  The Complaint does not state any facts connecting the Prince Estate, or Prince's allegedly wrongful conduct, to the State of New York. (*See* Dkt. 1 ¶¶ 23, 25, 35, 36.).  Such a connection cannot be drawn; Defendants NPG Music Publishing, LLC, NPG Records, Inc., and the Estate of Prince Rogers Nelson reside in Minnesota. (Dkt. 1 ¶¶ 9-10.)  The "Estate" is supervised through a probate proceeding pending in Minnesota.  None of the Estate entities regularly transact business in New York, and the Complaint does not allege otherwise. (*See generally* Dkt. 1; Affidavit of Andrea Bruce ("Bruce Affidavit") ¶¶ 2-10.)  This is not surprising; Prince primarily lived, wrote, and recorded at his home and personal studios at Paisley Park in Chanhassen, Minnesota. (Bruce Affidavit ¶ 11.)

  The Prince Estate moved to dismiss the Complaint in September 2019, arguing in part that it is not subject to personal jurisdiction in New York. (*See* Dkt. Nos. 93, 94).  In tacit acknowledgement that the Complaint fails to establish personal jurisdiction, Brandon moved for jurisdictional discovery. (*See* Dkt. No. 102).  During a telephone conference with this Court, counsel for the Estate expressed doubt that jurisdictional

discovery would be fruitful, but nonetheless agreed to limited discovery in good faith. This Court granted Brandon leave to conduct jurisdictional discovery. (Dkt. No. 108).

Over the next three months, Brandon served the Estate and the remaining Defendants with document requests and interrogatories. (*See* Tavernier Decl. at Ex. 17.) Brandon also served document subpoenas on Warner Brothers (defendant in the Florida Litigation); Universal Music Group, Inc.; S. Carter Enterprises, LLC; and Roc Nation, LLC. (*Id.* at Ex. 18.) The subpoenas to S. Carter Enterprises, LLC, and Roc Nation, LLC were later withdrawn, and subpoenas were then issued to Aspiro AB, and Tidal. (*Id.*) Altogether, Brandon served discovery on ten separate persons and entities. Of these ten, only former Florida Litigation defendant Warner Brothers, current Defendant Twentieth Century Fox Film Corp. ("Fox"), and the Estate produced documents in response to the discovery. The document produced by Fox does not relate to the Prince Estate in any way. (*Id.* at ¶ 22.) The three documents produced by the Estate are from 1995, and relate to financing and licenses for the "Girl 6" soundtrack with Warner Brothers and Fox in California. (*Id.*) Of the thirteen documents produced by Warner Brothers, all were dated between 1986-1996, and only some relate to "Girl 6." (*Id.*) None of the documents establish a jurisdictional nexus between Prince or his Estate and New York.

**III. Attempts to Meet and Confer with Plaintiff's Counsel.**

The history of the Prince Estates' attempts to meet and confer with Brandon's counsel is puzzling, if not concerning.  Upon receiving notice of the instant suit, the Estate sent a letter to Brandon's counsel and informed him of the Florida Litigation and its barring effect on this action. (Tavernier Decl. at Ex. 8.)  Undeterred, Brandon served the Complaint.  Counsel for Brandon and the Prince Estate then had a phone conversation to discuss the Estate's concerns with the suit. (*Id.* ¶ 11.)  The Estate thereafter sent another letter to Brandon's counsel, explaining that lack of personal jurisdiction and the Florida Judgment rendered the suit meritless.  (*Id.* at Ex. 9.)  Brandon's counsel nevertheless chose to proceed with the action. (*Id.* at Ex. 10.)  The Prince Estate attempted to meet and confer with counsel for Brandon a third time following the close of jurisdictional discovery on the particular issue of personal jurisdiction. (*See* Dkt. No. 139.)  Brandon's counsel refused.  (Tavernier Decl. Ex. 19.)

## ARGUMENT

Brandon ignored the Florida Judgment, recycled the Florida Complaint, and is now attempting to relitigate issues that were decided against him, on the merits, three years ago.  Even more concerning, he shopped the case to this forum without a whiff of personal jurisdiction, only to spend months in an after-the-fact attempt to manufacture personal jurisdiction which, predictably, failed.  The Estate requests that the Court dismiss the Complaint with prejudice under Rules 12(b)(2) and 12(b)(6).

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE ESTATE.

Brandon's copyright infringement claim against the Estate should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  As the plaintiff, it is Brandon's burden to establish personal jurisdiction. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (internal citations omitted).  A *prima facie* showing of personal jurisdiction requires "an averment of facts that, if credited…would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d. Cir. 2010) (internal citations omitted).  Brandon must establish first that personal jurisdiction is authorized by the forum state's long arm statute, and, second, that the exercise of personal jurisdiction comports with due process. *Chloe*, 616 F.3d at 163–64.  Brandon did not allege any facts, nor were any facts revealed in jurisdictional discovery, to satisfy these requirements.

### A.  New York's Long-Arm Statute Does Not Reach the Estate.

New York's long-arm statute does not authorize the exercise of personal jurisdiction over the Estate.   Under C.P.L.R. 302(a)(1), "the defendant must have transacted business within the state" and "the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 273 (2d Cir. 1981)).   A claim arises from a transaction when "there is some articulable nexus between the business transacted and the cause of action sued upon." *McGowan*, 52 N.Y.2d at 272.

The Complaint contains only cursory legal conclusions regarding the Estate's transactions in New York. (Dkt. 1 ¶ 6.)  These boilerplate statements, devoid of actual

support, are categorically insufficient.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (courts need not "accept as true a legal conclusion couched as a factual allegation").  Furthermore, discovery did not reveal a jurisdictional nexus between this cause of action, New York, and the Estate.  Rather, jurisdictional discovery *confirmed* that Prince's relevant acts occurred in Minnesota; documents produced by Warner Brothers demonstrate that "Girl 6" was recorded (and therefore also likely written) at Paisley Park.  (Tavernier Decl. ¶ 24.)

The Complaint does not contain, and jurisdictional discovery did not yield, any facts that would establish personal jurisdiction under any other provision of New York's long-arm statute. *See generally* C.P.L.R. 302(a).  As such, personal jurisdiction fails under New York's long-arm statute.

### B.  Personal Jurisdiction Does Not Comport with Due Process.

Similarly, Brandon cannot establish that the Estate has contacts with New York sufficient to satisfy the requirements of due process.  There are two parts to the due process analysis: "the 'minimum contacts' analysis and the 'reasonableness' inquiry." *DoubleLine Capital LP v. Construtora Noberto Odebrecht, S.A.*, 13 F.Supp. 3d 187, 217 (S.D.N.Y. 2019) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

### i.  Brandon Fails to Establish Minimum Contacts.

The due process inquiry asks "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.,* 835 F.3d 317, 331 (2d Cir. 2016).

Minimum contacts may be established by alleging either specific or general jurisdiction. *Id*.

Brandon appeared to concede that general jurisdiction does not exist when he chose to conduct jurisdictional discovery solely on the question of specific jurisdiction. However, because Brandon's counsel refused to meet and confer, the Estate is now compelled to address the issue of general jurisdiction and explain why it is in fact lacking. The Estate is not "at home" in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (stating that a corporation is at home at its place of incorporation and its principal place of business). NPG Records, Inc., and the Estate of Prince Rogers Nelson are each residents of, and principally conduct business in, the State of Minnesota. (Bruce Affidavit ¶¶ 2, 5, 7-10.) Defendant NPG Music Publishing, LLC is incorporated in California, but is run by the Estate in Minnesota. (*Id.* ¶¶ 6, 7-10.) The Estate is therefore not subject to general jurisdiction in New York.

Likewise, there is no specific jurisdiction because nothing connects the Estate's alleged infringement of "Phone Sex" to New York. Specific jurisdiction "depends on in-state activity that 'gave rise to the episode-in-suit.'" *Waldman*, 835 F.3d at 331 (quoting *Goodyear Dunlop*, 564 U.S. at 919). Brandon has come forward with zero facts suggesting that either Prince or his Estate engaged in relevant activity in New York. (*See generally,* Dkt. 1; Bruce Affidavit.). The pittance Brandon received in response to discovery sent to *ten separate entities* only confirms that the Estate does not have any jurisdictional contacts with New York. Brandon failed to establish a *prima facie* case

that the Estate has "minimum contacts" with this forum so as to permit the exercise of personal jurisdiction.

*ii. Exercise of Personal Jurisdiction is Unreasonable.*

Given the Estate's lack of contact with New York, exercise of personal jurisdiction over the Estate is neither fair nor reasonable. The exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945)). In considering this question, courts analyze several factors, including "the interests of the forum state in adjudicating the case." *Chloe*, 616 F.3d at 165 (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 113–14 (1987)). Jurisdiction is more likely to satisfy due process demands when there is a "threshold showing of minimum contacts." *Metro. Life Ins.*, 84 F.3d at 568.

There has been no such threshold showing here. Overbroad jurisdictional discovery that spanned nearly twenty-five years of documents did not reveal any contacts that would render the exercise of personal jurisdiction fair or just. The *Asahi* factors weigh against exercising personal jurisdiction in this case; with no facts that connect the Estate to New York, New York has no reasonable interest in adjudicating the case. Brandon, a Maryland resident, brought this New York action against a Minnesotan Estate after having already litigated the claim in Florida—which suggests that jurisdiction is not only unreasonable, but that this case was brought for an improper purpose. Brandon has now *twice* failed to meet his burden of making a *prima facie* showing of personal jurisdiction, and inexplicably insists on prosecuting this case despite its obvious lack of

merit.  The Complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

## II.    RES JUDICATA BARS THIS SUIT.

Though this action is dismissible for lack of personal jurisdiction, dismissal is also appropriate under the doctrine of res judicata pursuant to Rule 12(b)(6).[3]  Res judicata encompasses the related doctrines of claim preclusion and issue preclusion. *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107-08 (2d Cir. 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).   Claim preclusion bars a party from relitigating a case where there is a final judgment on the merits and the parties or their privies are identical in both suits. *Id.*  Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Id.*  The Florida Judgment bars the Complaint and the claims asserted therein under both doctrines.

### A.  This Action is Claim Precluded.

Claim preclusion "ensures that when a party is victorious, it does not have to defend that victory again." *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 237 (2d Cir. 2018) (internal quotations omitted).  "The preclusive effect of a federal court's judgment issued pursuant to its federal-question jurisdiction is governed by the federal common law of preclusion." *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir.

---

[3] It is settled law that claim preclusion and issue preclusion are proper bases for dismissal pursuant to Rule 12(b)(6). *See Weaver v. IndyMac Federal Bank, FSB*, 2019 WL 4563893 at *9 (S.D.N.Y. Sept. 9, 2019).

2012).   Application of claim preclusion requires (1) a prior action which resulted in an adjudication on the merits; (2) the prior action involved the same party or those in privity with them; and (3) the claim sought to be precluded was raised, or could have been raised, in the prior action. *Marcel Fashions Group*, 898 F.3d at 237.   The Florida Litigation satisfies all three elements.

### *i. The Florida Judgment is an Adjudication on the Merits.*

Judge Williams' dismissal of the Florida Complaint constitutes an adjudication on the merits. The Florida Judgment states that the Estate was dismissed under Fed. R. Civ. P. 41(b). (Tavernier Decl. at Ex. 2, p. 20.)[4]  That rule explicitly provides that, unless a court indicates otherwise, a Rule 41(b) dismissal "operates as an adjudication on the merits."

Moreover, the Florida Judgment was a judgment on the merits because it was based on the substantive deficiencies of Brandon's copyright claim; deficiencies which are repeated word-for-word in the instant Complaint. *See Cameron v. Church*, 253 F.Supp.2d 611, 619 (S.D.N.Y. 2003) (finding that a Rule 12(b)(6) dismissal for failure to state a claim "operated as a decision on the merits").  Judge Williams fully analyzed Brandon's claim over the span of her twenty-one page order and conclusively determined

---

[4] In addressing a Rule 12 motion, courts may "take judicial notice of documents filed in other courts." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  This includes motions to dismiss on the basis of claim preclusion. *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (stating that a Rule 12(b)(6) dismissal on res judicata grounds is appropriate when "it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law") (internal citations omitted).

that "Girl 6" does not, and *cannot*, infringe "Phone Sex." (Tavernier Decl. at Ex. 2, pp. 8-17.)  Specifically, she found that Brandon's copyright is limited to the lyrics of "Phone Sex," so that infringement was dependent on the similarities between the phrases "Phone Sex" and "Girl 6." (*Id.*)  Citing a litany of case law, Judge Williams found that "Phone Sex" is a short phrase not legally entitled to copyright protection, and therefore, there was no basis for infringement. (*Id.*)  The Florida Litigation thus was dismissed on the merits.

### ii. The Florida Litigation involved the Estate and its Privies.

The Florida Litigation involved Prince, his Estate, and those in privity with them. As the Prince Estate itself was a party to the Florida Litigation, this element of claim preclusion is satisfied.  *See Marcel Fashions Group*, 898 F.3d at 236-37 (noting that a plaintiff is barred "from relitigating claims against a defendant that it lost in a previous action against the same defendant").

The Complaint is also precluded against the Estate due to the Estate's privity with Warner Brothers.  To establish privity, the privity need not be "literal." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).  Rather, the question of privity is "one of substance." *Alpert's Newspaper Delivery Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989).  Privity may exist when the non-party was adequately represented in the suit "by someone with the same interests." *Taylor*, 553 U.S. at 894 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)).  The requirement of party identity "exists primarily for the purpose of protecting the interests of parties not present or represented in prior litigation." *Zoll v. Ruder Finn., Inc.*, 2003 WL 22283830 at *7 (S.D.N.Y. Oct. 2, 2003).

- 15 -

The Estate and Warner Brothers entered into an indemnification agreement for the Florida Litigation. (Tavernier Decl. at Ex. 3, p. 1; Ex. 4, p. 1.)  Accordingly, the Estate and Warner Brothers are in privity for purposes of claim preclusion. *See Zoll*, 2003 WL 22283830 at *7 (privity found where the parties had an indemnification agreement); *Taylor*, 553 U.S. at 894 (stating that various "substantive legal relationships" justifies nonparty preclusion); *Applications in Internet Time, LLC. v. RPX Corp.*, 897 F.3d 1336, 1361-62 (Fed. Cir. 2018) (analyzing *Taylor* and explaining that such "substantive legal relationships" may include indemnitor-indemnitee relationships).   The court in the Florida Litigation was aware of this indemnification agreement. (Tavernier Decl. at Ex. 3, p. 1; Ex. 4, p. 1.).  Further, the Estate's interest in the Florida Litigation was identical to Warner Brothers; Brandon's copyright infringement claim was brought against both parties, and each would have faced liability if "Girl 6" was found to infringe "Phone Sex."  The Estate thus had identical "interests and incentives" as Warner Brothers to "defend[] against the same claims based on the same alleged wrongdoing." *Harding v. Paramount Pictures*, 2013 WL 174401 at *7 (S.D.N.Y. Jan. 16, 2013) (quoting *Melwani v. Jain*, 2004 WL 1900356 at *3 (S.D.N.Y. Aug. 24, 2004)).   Brandon's complaint against Warner Brothers was dismissed pursuant to its Rule 12(b)(6) motion.  (*See* Tavernier Decl. Exs. 2, 12.)  As such, both the Estate and its privies were parties to the Florida Litigation.

### iii. The Instant Claim was Brought in the Florida Litigation.

Finally, the Florida Litigation involved an identical claim as that reflected in the Complaint.  Courts assess whether the two actions involve the same "claim" or "nucleus

of operative fact" to determine whether claim preclusion applies. *Channer v. Department of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008). As discussed above, the Complaint is a nearly word-for-word regurgitation of the Florida Complaint. Both the claim itself, and the operative facts, are identical. To the extent Brandon now asserts new arguments, such arguments certainly could have been raised during the two-year odyssey of the Florida Litigation, or indeed, on appeal – but Brandon did not appeal the Florida Judgment. The Complaint is therefore barred by claim preclusion and should be dismissed.

### B. Issue Preclusion bars the Issue Asserted in the Complaint.

Even if claim preclusion does not bar the Complaint, issue preclusion prevents Brandon from relitigating whether "Girl 6" infringes "Phone Sex." Issue preclusion prevents relitigating an issue of fact or law when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-89 (2d Cir. 2002). For similar reasons that claim preclusion bars this suit, the issue of whether "Girl 6" infringes "Phone Sex" is precluded.

### i. Infringement of "Phone Sex" was Raised and Actually Litigated.

The parties to the Florida Litigation actually litigated the identical question of copyright infringement that is at issue here. Brandon brought *three* complaints over the course of *two years*, giving him ample time for fact-finding to bolster his copyright claim.

As the Florida Litigation progressed, the defendants argued, and Brandon disputed, whether "Girl 6" could infringe Brandon's copyrights in "Phone Sex." (Tavernier Decl. at Ex. 11, pp. 5-11; Ex. 12, pp. 7-10, 12; Ex. 13, pp. 7-11; Ex. 14, pp. 2-7; Ex. 15, pp. 2-6; Ex. 16, pp. 2-6, 8.)  Judge Williams addressed the issue at length in the Florida Judgment, citing at least twelve cases for the proposition that short phrases like "Phone Sex" are not entitled to copyright protection. (*Id*. at Ex. 2, pp. 10-12.)  Such extensive briefing and analysis demonstrate that the issue was actually litigated. *See Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 513 B.R. 437, 441 (S.D.N.Y. 2014) (finding that an issue was "minimally litigated" as it was accorded "a few sentences in each party's otherwise extensive submissions to the court).  That the Florida Judgment was rendered upon a Rule 12 motion does not alter the analysis.  *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y 2014) (issue preclusion barred a claim that was dismissed on a Rule 12 motion on the prior action); *Nealy v. Berger*, 2009 WL 704804 at *10 (E.D.N.Y. Mar. 16, 2009) (finding that a claim was actually litigated despite that the prior claim was dismissed *sua sponte* for failure to state a claim). Whether "Girl 6" infringes "Phone Sex" was thus actually litigated.

### ii.  Brandon had a Full and Fair Opportunity to Litigate.

Brandon cannot "contend that [he] was deprived of an opportunity to be heard" on whether "Girl 6" infringed "Phone Sex," given the extensive briefing, time extensions, and multiple opportunities to amend the complaint which were afforded him. *Ferring B.V. v. Serenity Pharmaceuticals, LLC*, 2019 WL 2590732 at *13 (S.D.N.Y. 2019)

(finding that a party had a "full and fair opportunity to litigate" in light of the prior judge's extensions of time for briefing the issue). Review of the record in the Florida Litigation demonstrates that Judge Williams afforded Brandon and his attorneys every opportunity to properly state a claim. (Tavernier Decl. at Ex. 2, pp. 1-4.) Moreover, Brandon had ample opportunity to appeal the Florida Judgment, but failed to do so. Brandon has had more than one day in court. He should not be permitted to waste more judicial resources attempting to relitigate his claim here.

### iii. The Copyright Findings were Necessary to Support Dismissal of the Florida Litigation.

The finding that "Girl 6" does not infringe "Phone Sex" was necessary to the Florida Judgment because it provided the basis for dismissal. (*Id.* at Ex. 2, pp. 8-20.) This is not a case where the prior court skirted around an issue or decided it in dicta. *See Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91–92 (2d Cir. 1997) (finding that, where the district court "did not reach the issue" and "expressed no opinion on" the issue, resolution of the issue was not necessary to support the final judgment). Rather, Judge Williams directly addressed the merits, deciding that Brandon's rights were limited to the lyrics of "Phone Sex," and that the phrase "Phone Sex" was not entitled to copyright protection, rendering the copyright infringement claim meritless. Issue preclusion bars Brandon from relitigating that issue here. The Complaint, which contains no other issue of law, should therefore be dismissed.

## III.   FAILURE TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

In the alternative, this suit should be dismissed for failure to state a claim for copyright infringement due to the same pleading deficiencies identified by Warner Brothers and Tommy Elm in the Florida Litigation. (*See* Tavernier Decl. at Exs. 11-12, 15-16.)  Stating a claim for copyright infringement requires, at a minimum, allegations that the defendant had access to the copyrighted work, and substantial similarity between the protected work and the allegedly infringing work.  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  The Complaint contains no facts supporting either element.

As discussed above, Brandon's copyright for "GOMAB DEMO: PT. 1" covers only the lyrics, not the music, of "Phone Sex."  Brandon's sole basis for substantial similarity, then, is that both songs contain "two-word hooks" with similar consonants.  As Judge Williams stated, such two-word phrases are not entitled to copyright protection. (Tavernier Decl. at Ex. 2, pp. 10-12.)

Furthermore, Brandon failed to allege any facts suggesting that Prince had access to "GOMAB DEMO: Pt. 1" or "Phone Sex."  The only allegations in the Complaint that even suggest access to the work are *entirely unrelated to Prince and the Estate*.  (See Dkt. 1, ¶¶ 16-21.)  Furthermore, even if the allegations did implicate the Estate, the Florida Judgment analyzed Brandon's allegations regarding access, and determined that they are insufficient to state a claim for copyright infringement. (*Id.* at pp. 15-17).  As such, the Complaint fails to state a claim for copyright infringement and should be dismissed.

## CONCLUSION

Brandon has been litigating this claim against the Estate for at least the last five years.  Though the Estate has patiently litigated in good faith, any further waste of time or resources is manifestly unjust.  For the reasons stated above, Defendants respectfully request that the Court dismiss this action with prejudice.

Respectfully submitted,

Dated: February 27, 2020

/s/Michael Tricarico
Michael J. Tricarico
**KENNEDYS CMK**
570 Lexington Avenue, 8th Floor
New York, New York  10022
Tel:  (646) 625-3952
Fax:  (646) 625-4044
Michael.Tricarico@kennedyscmk.com

Lora M. Friedemann (*admitted pro hac vice*)
Anne Rondoni Tavernier (*admitted pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  (612) 492-7000
Fax: (612) 492-7077
lfriedemann@fredlaw.com
arondonitavernier@fredlaw.com

***Attorneys for Defendants NPG Records, Inc.,
NPG Music Publishing, LLC,
the Estate of Prince Rogers Nelson, and
Comerica Bank & Trust, N.A.***

- 21 -

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 27th day of February, 2020, a copy of the foregoing Defendant's Motion to Dismiss was filed on the Court's Electronic Filing System and therefore served upon the following:

David Ludwig
Dunlap Bennett & Ludwig PLLC
31 W 34th St. #8030
New York, New York 10001
Telephone: (917) 338-1905
Facsimile: (703) 777-3656
dludwig@dbllawyers.com

Matthew S. Nelles
Nelles Kostencki, PLLC
Corporate Center
110 E. Broward Blvd., Suite 670
Fort Lauderdale, FL 33301
Telephone: (954) 246-4800
Facsimile: (954) 246-4900
Email: mnelles@nklawflorida.com

Howard J. Shire
Pepper Hamilton LLP
The New York Times
Building
620 Eighth Avenue, Ste. 37th
Floor New York, NY 10018
Telephone: (212) 808-2700
Email:shireh@pepperlaw.com

              /s/ Michael J. Tricarico
              Michael J. Tricarico

69382078 v3

- 22 -