USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

JAMES M. BRANDON,                          :
                                           :
                            Plaintiff,     :
                                           :          1:19-cv-01923-GHW
            -against-                      :
                                           :          MEMORANDUM OPINION
NPG RECORDS, INC., NPG MUSIC               :          AND ORDER
PUBLISHING, LLC, THE ESTATE OF PRINCE      :
ROGERS NELSON, COMERICA BANK &             :
TRUST, N.A., SHELTON JACKSON LEE,          :
FORTY ACRES AND A MULE MUSICWORKS,         :
INC., TWENTIETH CENTURY FOW FILM           :
CORPORATION,                               :
                                           :
                            Defendants.    :

-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

Plaintiff James Brandon owns the copyright for "Phone Sex," a song created in 1993 by

"GOMAD," a musical group managed by Mr. Brandon.  In 2015, Mr. Brandon brought an action in

the United States District Court for the Southern District of Florida, alleging that the song "Girl

6"—performed by Prince for Spike Lee's film of the same name—infringed on the copyright for

Phone Sex.  The Southern District of Florida dismissed that case with prejudice, holding that Mr.

Brandon had failed to state a claim that Girl 6 infringed the copyright for Phone Sex.  But Mr.

Brandon did not get the message.  Instead, he filed this action raising the same claims against a

different set of defendants.  Because the doctrine of collateral estoppel clearly bars Mr. Brandon

from relitigating claims that were previously decided against him, this action, like its subject, is

fruitless.  Defendants' motion to dismiss is GRANTED.

I.       **BACKGROUND**

   a.  **Facts**[1]

         i.  **Phone Sex and Girl 6**

"In 1993, Plaintiff was the manager of the musical group GOMAB."  Amended Complaint

("AC"), Dkt. No. 66, ¶ 14.  GOMAB created, wrote, produced, and performed the musical work

GOMAB Demo : PT.1 ("GOMAB DEMO"), which included the song "Phone Sex," in 1993.  *Id.* ¶¶

14–15.

In 1994, Plaintiff met Clarence Lee, the uncle of Defendant Shelton Jackson Lee ("Spike

Lee"), while promoting GOMAB.  *Id.* ¶ 16.  During the meeting, Plaintiff played him the GOMAB

DEMO, including the song Phone Sex.  *Id.* ¶ 17.  With Plaintiff present, Clarence Lee called Spike

Lee to tell him about GOMAB and Phone Sex.  *Id.*  Spike Lee showed an interest in Phone Sex and

asked Clarence Lee to forward the song to Defendant Forty Acres and a Mule Musicworks, Inc.

("Forty Acres Music"), care of Lisa Jackson.  *Id.* ¶ 18.  Ms. Jackson was the soundtrack coordinator

for Spike Lee's upcoming film, Girl 6 ("Film Girl 6").  *Id.*

Plaintiff left the demo of Phone Sex with Clarence Lee, with the expectation that it would be

forwarded to Forty Acres Music.  *Id.* ¶ 19.  "Upon information and belief, [Phone Sex] was

forwarded to Defendant Forty Acres [Music], Lisa Jackson and Spike Lee," but neither Lisa Jackson

nor Spike Lee contacted Plaintiff about the music.  *Id.* ¶¶ 20–21.

On February 1, 1996, the song Girl 6 ("Girl 6") was registered with the United States

Copyright Office.  Defendant Prince Rogers Nelson ("Prince") and Tommy Elm were listed as its

authors.  *Id.* ¶ 23.  "NPG Publishing" is listed as the copyright claimant.  *Id.*  Prince performed the

---

[1] The facts are drawn from the Amended Complaint, Dkt. No. 66, and are accepted as true for the purposes of this motion to dismiss.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

song. *Id.* ¶ 25.

Girl 6 is played in the Film Girl 6, which was released on March 22, 1996 and was copyrighted on March 26, 1996. *Id.* ¶¶ 2, 24. Defendant Twentieth Century Fox Film Corporation registered the copyright in its name. *Id.* ¶ 24. Girl 6 is also contained in the soundtrack for the Film Girl 6, which was released in March of 1996. *Id.* ¶ 25. Prince was the producer of the soundtrack for the film. *Id.* The soundtrack was distributed by Warner Bros Records, Inc. ("Warner Brothers"). *Id.*

Plaintiff alleges Girl 6 "shares substantial and significant similarities" with Phone Sex. *Id.* ¶ 30. He identifies the following similarities:

> The two songs share substantially similar hooks. [Phone Sex] contains a two-word, two-pitch hook, containing the lyrics "phone sex," beginning on the fourth beat and ending on the first beat. The Song Girl 6 contains a two-word, two-pitch hook, with the lyrics "girls six," beginning on the fourth beat and ending on the first beat. Moreover, the second word on each hook of both songs, (i.e. "sex" and "six"), repeatedly contain identical consonants ("s" and "x") and are set to similar melodies.

> In addition, the trumpet hit arrangement in Song Girl 6 directly copies the trumpet hit arrangement in [Phone Sex]. The arrangement is a single E-flat pitch, which is played throughout various portions of the two songs. The arrangement is played throughout the chorus and the closing section of Song Girl 6. The same is played in the introduction of [Phone Sex].

> The two songs also share a similar layout as they both incorporate an echo-sound reverberation effect.

*Id.* ¶¶ 30–32.

## ii. The Copyright Registration

In 1995, two members of GOMAB registered GOMAB DEMO, including Phone Sex, with the United States Copyright Office. *Id.* ¶ 22. The "nature of this work" on this copyright registration (the "Copyright Registration") is listed as "Song Lyrics." AC, Ex. A, Dkt. No. 66-1. The public copyright catalog describes the type of work as "music," AC ¶ 22, and the notes add, "[c]ollection of song lyrics." AC, Ex. B, Dkt. No. 66-2.

On December 14, 2013, the GOMAB members who registered GOMAB DEMO "transferred all rights, title, and interest in [Phone Sex] to Plaintiff." AC ¶ 27. Plaintiff recorded the assignment with the United States Copyright Office on January 8, 2014. *Id.* ¶ 28.

On April 6, 2016, Plaintiff filed a form CA to amend the registration information of GOMAB DEMO (the "Supplemental Application"). *Id.* ¶ 29. "The amendment was made to correct the description of the registration to reflect song melody, lyrics, arrangement, and performance of the music, and the names of its original authors." *Id.*

### b. Procedural History

#### i. The Florida Litigation

On July 22, 2015, Plaintiff filed a copyright infringement action in the Southern District of Florida, Case No. 15-22738-CIV-WILLIAMS (the "Florida Litigation"). Plaintiff asserted copyright claims against seven named defendants, most of whom are defendants in this action: New Power Generation, Prince, Elm, Spike Lee, Forty Acres Music, Forty Acres and a Mule Filmworks, and Warner Brothers. *See* Declaration of Howard J. Shire ("Shire Decl."), Ex. D, Dkt. No. 63-4, Order Granting Motions to Dismiss Third Amended Complaint (the "Florida Decision"), *Brandon v. New Power Generation, et al.*, Case No. 15-22738-CIV-Williams, at 2. Plaintiff filed his first amended complaint on October 13, 2015, before any responsive pleadings were filed, adding additional facts to his claims. *Id.*

Following a series of deficient efforts at service, NPG, Prince, Spike Lee, and Forty Acres Music were dismissed from the action without prejudice. *Id.* at 2–3. The Court permitted Plaintiff to file a second amended complaint, subject to certain conditions. Plaintiff filed that second amended complaint on February 16, 2016. *Id.* at 3. After a number of the defendants moved to dismiss or strike the second amended complaint, Plaintiff filed his own motion to dismiss the action without prejudice. *Id.* at 3–4. The Florida Court granted the defendants' motions to dismiss and

"afforded Plaintiff one last opportunity to file" an amended complaint, despite having already admonished Plaintiff there would be no further amendments.  *Id.* at 4.  Plaintiff filed his third amended complaint (the "TAC") on March 9, 2016.  *Id.*  Shire Decl., Ex. H, Dkt. No. 66-5.

The allegations in the TAC mirrored the allegations in Plaintiff's Amended Complaint in this action, and in many places are identical or nearly identical.  The TAC alleges, *inter alia*, that Plaintiff was the manager of a group named GOMAB, which wrote, produced, and performed the song "Phone Sex" on a demo recording entitled "GOMAB DEMO PART I."  TAC ¶¶ 16–17.  During a meeting between Plaintiff and Clarence Lee, Clarence called Spike Lee and played the song for him, after which Spike Lee showed interest in the work and requested it be forwarded to Lisa Jackson. *Id.* ¶¶ 19–20.  The TAC alleged that Girl 6 infringes on Phone Sex in the same manner alleged in this case.  *Compare id.* ¶¶ 33-35, *with* AC ¶¶ 30–32.  As here, the TAC was based upon on the same Copyright Registration registered in 1995, assigned to Plaintiff on December 14, 2013, and allegedly amended by the Supplemental Application on April 4, 2016.  TAC ¶¶ 23, 29–31.

In the TAC, Plaintiff pleaded two counts of copyright infringement.  *Id.* ¶¶ 40–65.  He alleged that the defendants "infringed the copyright of [Phone Sex] by incorporating it into [Girl 6] without authorization," *id.* ¶ 43, and by "publish[ing], manufactur[ing], distribut[ing], [selling] and licens[ing] copies of [Girl 6], incorporating substantial portions of [Phone Sex]" without authorization and without paying Plaintiff.  *Id.* ¶¶ 44, 57.

Defendants Elm and Warner Brothers filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  Tavernier Declaration (Tavernier Decl.), Dkt. No. 143, Exs. 11–12.  Elm also moved to strike the Supplemental Application.  Tavernier Decl., Ex. 11. Defendant Bremer Trust, N.A. also filed a motion to dismiss.  Florida Decision at 1.

On March 31, 2017, Judge Kathleen M. Williams (the "Florida Court") granted the motions to dismiss, dismissing the TAC for failure to state a claim for copyright infringement against Elm

and Warner Brothers.  *Id.* at 8.  She laid out the relevant legal standard for copyright infringement:  "[t]o state a claim for copyright infringement, Plaintiff must sufficiently allege two elements:  (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original."  *Id.* (internal quotation marks omitted).  "With regard to the second element, if no allegations support the possibility of direct of copying, a plaintiff may still show copying of a protected work by demonstrating that:  (1) the defendants had access to the work; and (2) the purportedly infringing work is 'substantially similar' to the protected work."  *Id.*[2]

The Florida Court determined that "[c]opyright protection does not automatically extend to every component of a copyrighted work, and, sometimes, elements of a work that a plaintiff seeks to protect are objectively not copyrightable."  *Id.* at 9–10.  Citing a litany of federal caselaw, the Florida Court held that words and short phrases such as "phone sex" are not copyrightable.  *Id.* at 9–12.  Therefore, the Florida Court agreed with the defendants' contention that "the lyrical similarity" between Girl 6 and Phone Sex "alone cannot form the basis for a copyright infringement claim because the two-word phrase 'phone sex' is not copyrightable, and is not an appropriate basis for claiming 'substantial similarity' for the purposes of an infringement claim."  *Id.* at 9.  The Florida Court did "not address any non-lyrical elements of the Work which Brandon alleges that 'Girl 6' copies" because the Copyright Registration "on its face does not cover the song melody, arrangement or performance of the work."  *Id.* at 9 n.7.

The Florida Court then rejected Plaintiff's argument that the Supplemental Application expanded the scope of the Copyright Registration to include melody, arrangement, and performance.  *Id.* at 12–15.  Finally, the Florida Court held that, even assuming that the

---

[2] In the Second Circuit, "[t]o prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108–09 (2d Cir. 2001).  To establish infringement, the copyright owner must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  *Id.* at 110.

Supplemental Application had expanded the scope of the Copyright Registration, the TAC would still fail to state a claim because Plaintiff had failed to allege facts "to allow for the reasonable inference that Elm and Warner Brothers had access to the Work." *Id.* at 16.  For all of these reasons, the Florida Court granted the Rule 12(b)(6) motions to dismiss for failure to state a claim that Girl 6 infringed on the copyright for Phone Sex.  *Id.* at 8–17.

Finally, the Florida Court dismissed the case with prejudice against the remaining defendants for repeated failure to serve.  *Id.* at 17–20.  The Court does not recount this aspect of the Florida Decision in detail because it does not bear on the Court's dismissal of the case on the basis of collateral estoppel.

### ii.  This Litigation

Plaintiff initiated this action on February 28, 2019.  Dkt. No. 1.  Due to a procedural error, he refiled his Complaint on March 1, 2019.  Dkt. No. 10.  The Complaint asserted one count of copyright infringement pursuant to 17 U.S.C. § 501 *et seq*.  AC ¶¶ 39–48.  The only copyrighted work at issue is Phone Sex and the only allegedly infringing work is Girl 6.  The Complaint was amended on May 16, 2019, but the only amendment was an additional allegation regarding venue.  Dkt. No. 66.

On May 6, 2019, the Lee Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"), or in the alternative to transfer this case to the Southern District of Florida.  Dkt. No. 61.  The Court denied the motion to dismiss pursuant to Rule 12(b)(3) or to transfer on August 26, 2019.  Dkt. No. 89.

On September 12, 2019, Defendants Spike Lee, Forty Acres Music, and Twentieth Century Fox Film Corporation (the "Lee Defendants") filed a motion to dismiss pursuant to Rule 12(b)(6).  Dkt. No. 98.  Plaintiff filed his opposition on October 3, 2019, Dkt. No. 110 ("Lee Opp."), and the

Lee Defendants filed their reply on October 30, 2019.  Dkt. No. 113.

On September 10, 2019, Defendants NPG Records, Inc., NPG Music Publishing, LLC, the

Estate of Prince Rogers Nelson, and Comerica Bank & Trust, N.A. (the "Prince Defendants") filed

a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(2) ("Rule 12(b)(2)") and for failure to state a claim pursuant to Rule 12(b)(6).  Dkt. No. 93.  In

response to the Prince Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiff

sought leave to conduct jurisdictional discovery.  Dkt. No. 102.  The Court granted that request.

Dkt. No. 108.  Following jurisdictional discovery, the Prince Defendants filed a second motion to

dismiss pursuant to Rules 12(b)(2) and 12(b)(6) on February 27, 2020.  Dkt. No. 141.  Plaintiff filed

his opposition on March 12, 2020 ("Prince Opp."), Dkt. No. 146, and the Prince Defendants filed

their reply on March 19, 2020.[3]  Dkt. No. 155.

In connection with the Prince Defendants' motion to dismiss and related briefing, the parties

submitted documents produced during jurisdictional discovery.  Plaintiff, the Prince Defendants,

and non-party Warner Brothers all filed motions to seal certain of this information.  Dkt. Nos. 145,

153, 154.  The Prince Defendants also submitted a letter in support of Plaintiff's motion to seal.

Dkt. No. 151.  On March 20, 2020, the Court invited the parties to submit supplemental briefing on

the motions to seal, Dkt. No. 158, but no supplemental briefing was submitted.

Both the Lee Defendants and the Prince Defendants' motions to dismiss assert that the case

should be dismissed on the basis of both collateral estoppel and *res judicata.*  The Prince Defendants

add that it should be dismissed for failure to adequately allege they had access to Phone Sex or that

Girl 6 is substantially similar to Phone Sex.  Because the Court finds that collateral estoppel requires

this case to be dismissed, it does not reach the other issues raised in Defendants' motions, including

---

[3] The Prince Defendants' reply requests an opportunity to file a motion for attorneys' fees.  Dkt. No. 157.  Defendants may submit motions for attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2).

the Prince Defendants' arguments regarding lack of personal jurisdiction.[4]

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809, 165 (2d Cir. 2019) (citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

---

[4] The claims against all defendants are dismissed for failure to state a claim because Plaintiff is collaterally estopped from relitigating the issue of copyright infringement.  Therefore, the Court need not decide whether it has personal jurisdiction over the Prince Defendants.  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) ("[I]n cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, we may address first the facial challenge to the underlying cause of action and, if we dismiss the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants.").

of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to "facts stated on the face of the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

Nonetheless, "it is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." *Linden Airport Mgmt. Corp. v. New York City Econ. Dev. Corp.*, No. 08 CIV. 3810 (RJS), 2011 WL 2226625, at *3 (S.D.N.Y. June 1, 2011) (internal quotation marks omitted) (quoting *Sassower v. Abrams,* 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)).  "When a defendant raises *res judicata* or collateral estoppel as an affirmative defense and 'it is clear from the face of the complaint, and consideration of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law,' dismissal under Rule 12(b)(6) is appropriate." *Id.* (quoting *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir. 2000)).  "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

## III.   DISCUSSION

Under the doctrine of collateral estoppel, or issue preclusion, Plaintiff cannot relitigate the issue of copyright infringement.  The Florida Litigation finally determined that Plaintiff failed to state a claim that Girl 6 infringed on the copyright for Phone Sex, holding that the words "phone sex" were not copyrightable and that the Copyright Registration covered only the lyrics of the song Phone Sex.  That decision now binds Plaintiff in this litigation and this case must be dismissed as a result.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). Issue preclusion can be either "offensive" or, as used here, "defensive." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). "Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Id.*

The party seeking to invoke collateral estoppel need not have been a party to the first suit. "Under non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit." *GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *9 (S.D.N.Y. June 2, 2017) (internal quotation marks omitted) (quoting *Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 54 (2d Cir. 2008)).

"[F]ederal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." *Purdy v. Zeldes*, 337 F.3d 253, 258 n.5 (2d. Cir. 2003). Federal law thus applies to this claim, since the Court is tasked with assessing the preclusive effect of a decision from the United States District Court for the Southern District of Florida. "Under federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Id.* at 258 (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91

(2d Cir. 1997)).  Plaintiff contests only the third element, arguing that Plaintiff did not have a full and fair opportunity to litigate.  Lee Opp. at 3; Prince Opp. at 12 (incorporating by reference the issue preclusion arguments made in the Lee Opposition).

## 1.  Identical issue was raised in previous proceeding

The Florida Litigation concerned the same issue as this case—whether Girl 6 infringed on the copyright for Phone Sex.  To determine whether the identical issue was raised in a previous proceeding, "a court must determine 'first, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; second, whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion.'"  *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (quoting *Montana,* 440 U.S. at 155).

The Florida Litigation concerned claims by Plaintiff alleging that Girl 6 infringed his copyright for Phone Sex under the Copyright Registration.  In order to decide the issue, the Florida Court examined, *inter alia*, the scope of the Copyright Registration and whether the term "phone sex" was copyrightable such that it could give rise to an infringement claim.  Here, Plaintiff has brought a copyright claim involving the same protected song (Phone Sex) and the same infringing song (Girl 6) under the same Copyright Registration.  There has been no change in the controlling facts—indeed, the complaints are substantially the same—and Plaintiff points to no change in the controlling law.  Plaintiff asserts no special circumstances that warrant an exception to the normal issue preclusion rules.  Therefore, the first element of issue preclusion, identity of issues, has been satisfied.

## 2.  Issue was actually litigated and decided in previous proceeding

The issue of infringement was actually litigated and decided in the Florida Litigation because

Judge Williams dismissed the copyright infringement claims on the merits following comprehensive briefing on motion to dismiss that addressed the very issues on which she based her dismissal. The issue was litigated at length over the course of twenty months, three amended complaints and a full set of briefing that squarely addressed the issue of infringement. Florida Decision at 1–3. Elm and Warner Brothers each filed a separate motion to dismiss, Plaintiff filed oppositions to each, and replies were also filed in connection with each motion. *See* Tavernier Decl., Exs. 11–16. The question of infringement and the scope of the Copyright Registration were briefed extensively. *Id.*; *cf. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 437, 441 (S.D.N.Y. 2014) (collateral estoppel inappropriate in part because the issue was "at best minimally litigated" where argumentation on the issue was "limited to a few sentences in each party's otherwise extensive submissions to the Court").

The issue was then decided by Judge Williams. She undertook a thorough analysis and held that the alleged lyrical similarity between the two-word hooks for each song—"phone sex" and "girl six"—"alone cannot form the basis of a copyright infringement claim because the two-word phrase 'phone sex' is not copyrightable, and is not an appropriate basis for claiming 'substantial similarity' for the purposes of an infringement claim." Florida Decision at 9. Judge Williams further held that "[a]s a matter of law, Brandon's [Supplemental Application] does not expand the scope of the [Copyright Registration]," which served to limit the scope of the copyright claim to only the alleged lyrical similarities. Florida Decision at 13. Therefore, the issue of whether Girl 6 infringed on Phone Sex under the Copyright Registration was therefore both actually litigated and actually decided.

### 3. Plaintiff had a full and fair opportunity to litigate the issue

Plaintiff had a full and fair opportunity to litigate the infringement issue. The Florida Court rendered its Rule 12(b)(6) dismissal after extensive briefing, during which Plaintiff was fully heard.

*See* Tavernier Decl., Exs. 11–16.  Plaintiff bears the burden of demonstrating that he was denied a full and fair opportunity to litigate the issue:  "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues."  *GemShares*, 2017 WL 2559232 at *9 (alteration in original) (quoting *Constantine v. Teachers Coll.*, 448 Fed. App'x. 92, 93–94 (2d Cir. 2011)).  Nonetheless, Plaintiff identifies only two ways in which he allegedly was denied a full and fair opportunity to litigate this issue.

First, Plaintiff argues that the Florida Court dismissed his case, without prejudice, for failure to timely and properly serve defendants.  Lee Opp. at 4.  He argues that "the actual extent of the litigation [was] deficient on these important issues [of infringement] because the Florida Court primarily disregarded the issues and based its decision on issues of process as to the Defendants in this case."  Lee Opp. at 5.  This argument wholly ignores the Rule 12(b)(6) dismissal of the claims against Elm and Warner Brothers, which was based on substantive determinations regarding copyright infringement.  It is irrelevant that the resolution of this issue did not support a valid and final judgment on the merits as to Defendants in this case.  Identity of both parties is not necessary to support a finding of issue preclusion.  *GemShares*, 2017 WL 2559232 at *9.

Second, Plaintiff argues that, with respect to the Florida Court's dismissal on Elm and Warner Brothers' Rule 12(b)(6) motion to dismiss, he did not have a full and fair opportunity to litigate the issue because the Florida Court improperly resolved factual issues regarding infringement on a motion to dismiss.  Lee Opp. at 5.  This Court does not sit in review of a sister district court.  If Plaintiff took issue with the Florida Decision, the proper recourse was an appeal to the Eleventh

Circuit Court of Appeals, not a second bite at the apple in the Southern District of New York.[5]  *See*

*Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (applying collateral estoppel and rejecting

plaintiff's argument that "he did not have a full and fair opportunity to appeal because the district

court told him in informal colloquy that his only opportunity for relief was to appeal the Eastern

District ruling" because "[i]f [plaintiff] wished to contend that the district court was wrong, his

remedy was to appeal.  When he failed to do so, the Southern District's decision became final and,

by operation of collateral estoppel, conclusive on the issue.").  Therefore, Plaintiff's arguments that

he did not have a full and fair opportunity to litigate the issue are unavailing.

### 4. Resolution of the issue was necessary to support a valid and final judgment on the merits

The Florida Court's resolution of the infringement issue was necessary to support a valid and

final judgment on the merits.  Whether resolution of an issue was necessary "hinges on whether the

court's purported resolution of the potentially precluded issue constituted dicta in the prior court

decision or whether the court actually relied on the resolution of the issue as a necessary element to

reach a final judgment on the merits."  *C.D.S., Inc. v. Zetler*, 288 F. Supp. 3d 551, 557 (S.D.N.Y.

2017) (citing *Overview Books, LLC v. United States*, 438 F. App'x. 31, 33–34 (2d Cir. 2011) (concluding

that the final factor was satisfied where the prior court's resolution of the issue "was not mere dicta;

it was a necessary element of the court's conclusion")).  Here, the Florida Court's determination that

---

[5] In any event, the Florida Decision did not improperly resolve issues of fact; it properly resolved a Rule 12(b)(6) motion to dismiss.  The opinion demonstrates that Judge Williams accepted the facts alleged in the complaint as true but dismissed Plaintiff's claims as a matter of law.  Following an assessment of cases in which words and short phrases akin to "phone sex" were found to be not entitled to copyright protection, the Florida Court held:

> [A]lthough the [Third Amended Complaint] alleges that Brandon has a valid copyright in the lyrics of the Work pursuant to the [Copyright Registration] and subsequent assignment, the two-word phrase "phone sex" within those lyrics—which are the only words the [Third Amended Complaint] alleges that "Girl 6" infringes—is not a copyrightable phrase and cannot be the basis for Brandon's infringement claims.

Florida Decision at 12.  The Florida Court further ruled that "[a]s a matter of law, Brandon's [Supplementary Application] does not expand the scope of the [Copyright Registration], nor does it enable the Court to consider the [Third Amended Complaint's] allegations pertaining to Defendants' alleged copying of elements of the Work in which Brandon does not own a valid copyright."  *Id.* at 13.  Therefore, even if this Court were to sit in review of the Southern District of Florida, the Florida Court properly decided the case on a motion to dismiss, without deciding questions of fact.

Girl 6 did not infringe Phone Sex was not mere dicta— the Florida Court's decision was necessary for it to dismiss the Florida Litigation against Defendants Elm and Warner Brothers.  Brandon never appealed the Florida Decision and the judgment became final.[6]  Therefore, the resolution of the infringement issue was necessary to support the Florida Court's valid and final judgment on the merits.

Because all four requirements for collateral estoppel have been satisfied, Plaintiff is precluded from relitigating the issue of whether Girl 6 infringed on the copyright for Phone Sex. The Florida Court already determined that the words "phone sex" were not capable of being protected by copyright and that Copyright Registration covered only the lyrics of Phone Sex. Therefore, Plaintiff's copyright claim fails and Defendants' motions to dismiss are GRANTED.

## IV.    MOTIONS TO SEAL

Plaintiff, the Prince Defendants, and Warner Brothers filed motions to seal.  The parties seek to seal information concerning discussions and negotiations about financing and licensing for the Girl 6 soundtrack.  This information is contained in four exhibits from 1995 produced during jurisdictional discovery, one email regarding an interrogatory response, and related portions of the Plaintiff's opposition to the Prince Defendants' motion to dismiss and the Prince Defendants' reply. The documents are attached as exhibits to the declaration of Hyung Gyu Sun in opposition to the Prince Defendants' motion to dismiss (the "Sun Declaration").  Dkt. No. 149.  The motions are GRANTED in part and DENIED in part.

---

[6] That the Florida Court concluded lack of access would be an independent basis for dismissal against Elm and Warner Brothers, Florida Decision at 16, does not render unnecessary the resolution of the issues of whether "phone sex" is copyrightable and the scope of the Copyright Registration.  "The general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'" *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) (quoting *Irving National Bank v. Law,* 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.)).

### a. Legal Standard

There is a long-established "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016).  The Second Circuit has defined "judicial documents" as documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)); *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 620–621 (S.D.N.Y. 2011).  The presumption of access is "based on the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Therefore, motions to seal documents must be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection.  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994).  "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted) (quoting *In re Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).  Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third-parties.  *See E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (collecting cases).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action . . . ." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).  "[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and

circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978).

The Second Circuit recently summarized the three steps that the Court must follow to determine whether the presumption of public access attaches to a particular document and bars disclosure. *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document" – "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks omitted). Second, the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *United States v. Amodeo*, 71 F.3d at 1049 (2d Cir. 1995)). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

**b. Analysis**

With respect to step one of the *Mirlis* analysis, the information the parties seek to seal are clearly contained in judicial documents, that is, in briefing submitted to the Court. "Documents submitted in support or opposition to a motion to dismiss are judicial documents." *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2019 WL 4747654, at *5 (S.D.N.Y. Sept. 30, 2019) (citing *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018)). With respect to step two, the presumption of access does not have substantial weight because it did not play any role in the Court's analysis or decision. All of the information at issue concerns the Prince Defendants' motion to dismiss for lack of personal jurisdiction, which the Court did not reach.

Step three requires the Court to consider the countervailing interests that weigh against

18

public disclosure.  The parties erroneously rely in large part on confidentiality designations under the protective order.  "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document."  *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015).  The parties' protective order in this case allowed parties to designate materials as "Confidential," but made clear that their designation was not binding on the Court.  Dkt. No. 118, ¶ 10 ("This Order binds the Parties and certain others to treat as Confidential or Outside Counsel's Eyes Only any Discovery Materials so classified.  The Court has not, however, made any finding regarding the confidentiality of any Discovery Materials, and retains full discretion to determine whether to afford confidential treatment to any Discovery Material designated as Confidential or Outside Counsel's Eyes Only hereunder.").

The motions to seal are otherwise somewhat lacking in particularity, despite the Court's invitation to submit supplemental briefing in support of the applications.  Plaintiff's only justification for sealing is that the information "contains proprietary business information which is generally not available to the public and/or is information that is subject to confidentiality agreements."  Dkt. No. 145.  Warner Brothers adds that the documents "contain confidential, previously non-disclosed financial and licensing discussions related to the 'Girl 6' soundtrack, and its impact on a confidential contract between Prince and Warner."  Dkt. No. 153.  The Prince Defendants provide the most detail, arguing that the documents at issue "contain confidential, previously non-disclosed financial and business information related to the financing, licensing, and royalties associated with the 'Girl 6' soundtrack."  Dkt. No. 151 at 1.

Exhibits B, D, E, and G to the Sun Declaration (the "Sealed Document") are jurisdictional discovery documents that contain discussions and negotiations regarding the financing and licensing of the Girl 6 soundtrack, including specific royalty and lump sum payment rates, in connection with

a "highly confidential and extremely significant contract between Prince and Warner Brother Records" that has been kept "in the strictest confidence" for three decades. *Id.* While these documents are nearly 25 years old, the contract "continues to have an impact on the ownership and licensing of Prince music even after his death." *Id.* In light of the slight weight of the presumption of access with respect to these documents in this case, the parties' motions to seal these documents are GRANTED.

Exhibit H[7] to the Sun Declaration is an email exchange between counsel for Plaintiff and counsel for the Lee Defendants, in which counsel for the Lee Defendants confirms that Spike Lee does not recall a September 8, 1995 meeting referenced in Exhibit B. While this meeting may have concerned confidential financing and licensing information, nothing in Exhibit H discloses substantive information about those topics. The motions to seal Exhibit H to the Sun Declaration are DENIED.

Drawing on the Sealed Documents and Exhibit H, Plaintiff's opposition to the Prince Defendants' motion to dismiss describes a meeting at which and communications in which the Prince parties and the Lee parties discussed "their plans and strategies for financing and licensing the Girl 6 music for the film Girl 6 and the soundtrack Girl 6 and how they were going to make collaborative efforts to achieve their goals." Prince Opp. at 8. The Prince Defendants' reply also discusses this meeting. Dkt. No. 157. While the opposition and reply reveal that discussions regarding financing and licensing occurred, neither of these briefs contain details of what those arrangements were. The fact that the discussions and negotiations occurred does not itself disclose confidential information, and the parties do not provide adequate support for the Court to conclude that the existence of these discussions should itself be considered confidential. Therefore, the

---

[7] None of the sealing motions specifically identify this exhibit, but it is highlighted for redaction in docket number 149.

motions to seal Plaintiff's opposition to the Prince Defendants' motion to dismiss and the Prince Defendants' reply are DENIED.

## V.     CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are therefore GRANTED. Plaintiff's Amended Complaint is dismissed with prejudice.  "Although leave to amend should be granted freely, it is not warranted where the amendment of a complaint would be futile." *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 351 (S.D.N.Y. 2012) (citing *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 55 (2d Cir. 1995) ("Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion.  One good reason to deny leave to amend is when such leave would be futile.").  Here, any amendment would be futile because Plaintiff would still be collaterally estopped from alleging that Girl 6 infringed the Copyright Registration for Phone Sex.  Therefore, Plaintiff is denied leave to amend.

The motions to seal Exhibits B, D, E, and G to the Sun Declaration are GRANTED.  The motions to seal as to the remaining documents are DENIED.  The parties are directed to file unredacted copies of those documents.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 98, 141, 145, 153, and 154, to enter judgment for Defendants, and to close this case.

SO ORDERED.

Dated:  April 30, 2020

_____
GREGORY H. WOODS
United States District Judge